Daniel Pochoda (AZ #021979)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF ARIZONA
3707 North 7TH Street, Suite 235
Phoenix, Arizona 85014
Telephone: (602) 650-1854
dpochoda@acluaz.org

Alexa Kolbi-Molinas (*application for admission pro hac vice forthcoming*)
Brigitte Amiri (*application for admission pro hac vice forthcoming*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone:  (212) 549-2633
Akolbi-molinas@aclu.org
Bamiri@aclu.org

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| ARIZONA COALITION AGAINST DOMESTIC VIOLENCE,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN GREENE, in his Official Capacity as Director of the Arizona Department of Revenue,<br><br>Defendant. | No. CV<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

Plaintiff Arizona Coalition Against Domestic Violence ("AzCADV" or "the Coalition") for its complaint in the above-captioned matter alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff AzCADV is the membership organization representing organizations that provide services to victims of domestic violence in Arizona.

2. AzCADV brings this challenge to HB 2384 because it violates the First Amendment by excluding the Coalition's members from Arizona's Working Poor Tax

Credit Program ("the tax credit program" or "program") on the sole basis that they discuss abortion with the vulnerable women that they serve.

3. The tax credit program was designed to increase donations to qualifying organizations by allowing taxpayers to claim a credit on their state tax returns if they make a donation to a qualifying organization. A majority of Plaintiff's members currently qualify for and participate in the program.

4. HB 2384 alters the tax credit program by prohibiting an otherwise qualified organization from participating in the program if the organization provides, pays for, provides referrals for, or "promotes" abortion.

5. HB 2384 forces Plaintiff's members to stop providing crucial information about abortion to their clients, or face expulsion from the tax credit program and loss of its benefits. In direct contravention of the most basic First Amendment principles, HB 2384 thus punishes Plaintiff's members for speech the Legislature does not like and impermissibly conditions the availability of a benefit on forfeiture of the right to speak.

6. Providing information about abortion services (including referrals) is critical to many of Plaintiff's members and the women they serve. Many victims of domestic violence experience a range of sexually abusive behaviors that can lead to unwanted pregnancy. In addition, the birth of a child (and the accompanying emotional and financial implications) can make it far more difficult, and even impossible, for a woman to escape an abusive relationship.

7. If it is allowed to go into effect, HB 2384 could prevent pregnant women in crisis from deciding what is best for them and their circumstances—decisions that could

have enormous physical, even life-threatening, repercussions.  Whether that decision is to continue the pregnancy and parent, adoption, or abortion, it is critical that survivors of domestic and sexual violence facing an unintended pregnancy have access to comprehensive information about all their options.

8. Prohibiting Plaintiff's members from participating in the tax credit program solely because they discuss abortion with their clients violates the First Amendment.

9. Accordingly, Plaintiff seeks a declaratory judgment, and preliminary and permanent injunctive relief against enforcement of HB 2384.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343.

11. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Procedure, and the general legal and equitable powers of this Court.

12. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1), as the Defendant resides in this district.

## PARTIES

13. Plaintiff AzCADV is the statewide 501(c)(3) membership organization representing domestic violence service providers in Arizona.  AzCADV was formed in 1980 to enhance the delivery of services to domestic violence victims, to increase public awareness about the issue of domestic violence, and to reduce the incidence of domestic violence in Arizona families.  AzCADV's members provide victims of domestic violence

with a wide range of services including emergency and transitional shelter, employment services, child care, and counseling about and referrals for medical care, including referrals for abortion care. At least two-thirds of Plaintiff's approximately 30 members currently participate in the Working Poor Tax Credit Program. Many of them currently provide referrals for abortion to, and otherwise discuss the option of abortion with, survivors of domestic violence and sexual assault.

14. Defendant John Green is the Director of the Arizona Department of Revenue ("Department of Revenue" or "the Department"). Defendant Green is responsible under state law for the administration of Arizona's income tax laws, including the Working Poor Tax Credit Program, Ariz. Rev. Stat. Ann. § 43-1088 (2011), as amended by HB 2384.

## BACKGROUND

### The Working Poor Tax Credit Program

15. Since 1998, the State has operated the Working Poor Tax Credit Program, which allows individuals who make voluntary cash donations to qualifying organizations to claim a dollar-for-dollar credit against their state taxes. *See* Ariz. Rev. Stat. Ann. § 43-1088. This program thereby provides individuals with an incentive to donate to qualifying organizations. The goal of the program was to increase the moneys for charitable organizations serving poor clients.

16. The program allows a single individual or head of household to claim a credit of up to two hundred dollars, and allows a married couple filing jointly to claim a credit of up to four hundred dollars, in any taxable year. If the allowable tax credit

exceeds the taxes otherwise due on the claimant's (or claimants') income, or if there are no taxes due, the taxpayer(s) may carry forward the amount of the claim not used to offset future taxes for up to five consecutive taxable years. *See id.*

17. Each year, the Department of Revenue publishes a list of qualifying organizations; there were over 250 such organizations listed for 2011. *See* ARIZ. DEP'T OF REVENUE, WORKING POOR TAX CREDIT, http://www.azdor.gov/TaxCredits/WorkingPoorTaxCredit.aspx (last visited August 15, 2011). To claim the credit, an individual or couple filing jointly must provide the name of the qualifying organization to which they donated on forms provided by the Department of Revenue.

18. To participate in the program, an organization must meet the following criteria pursuant to Ariz. Rev. Stat. Ann. § 43-1088:

   a. 501(c)(3) status or be a designated community action agency that receives community services block grant program funds; and

   b. Spend at least 50% of its operating budget on services to residents of Arizona who receive temporary assistance to needy family benefits, are low income residents of this state, or are chronically ill or physically disabled children.

19. The statute defines "services" as "cash assistance, medical care, child care, food, clothing, shelter, job placement and job training services or any other assistance that is reasonably necessary to meet immediate basic needs and that is provided and used in this state." *Id.*

20. An organization that seeks to participate in the program must submit a written certification to the Department, signed by an officer of the organization under penalty of perjury, describing the services provided and demonstrating that it spends and

will continue to spend at least 50% of its operating budget providing these services to the population identified in the statute. *Id.*

21.  The Department of Revenue reviews each written certification and notifies the organization of its determination. The Department may also periodically request recertification. *Id.*

22.  An organization that knowingly or intentionally provides fraudulent information on its certification is subject to both criminal and civil penalties under Arizona law. *See, e.g.*, Ariz. Rev. Stat. Ann. §§ 42-1125, 1127 (2011).

23.  Because of its broad focus on supporting services to all of Arizona's poor, the tax credit program has resulted in significant donations to a diverse array of organizations, from Habitat to Humanity, nursery schools and youth centers to a number of so-called crisis pregnancy centers (organizations which counsel women against having an abortion) and domestic violence service providers, including Plaintiff's members. Qualifying organizations routinely advertise this status to taxpayers in an effort to increase donations.

24.  According to the Department, in 2008, 36,568 Arizona taxpayers claimed the working poor tax credit, for a total of 11.06 million dollars. ARIZ. DEP'T OF REVENUE, THE REVENUE IMPACT OF ARIZONA'S TAX EXPENDITURES FY 2009/10, at 48 (2010), *available at* http://www.azdor.gov/LinkClick.aspx?fileticket=JL-F9b7MZ-M%3d&tabid=108&mid=492.

## HB 2384

25. HB 2384 amends Ariz. Rev. Stat. Ann. § 43-1088 (2011), by altering the program to disqualify otherwise eligible organizations based solely on their activities related to abortion.

26. HB 2384 disqualifies otherwise eligible organizations from participating in the tax credit program if they "provide, pay for, promote, provide coverage of or provide referrals for abortions" and/or if they "financially support any other entity that provides, pays for, promotes, provides coverage of or provides referrals for abortions."

27. No other subject matters or points of view of the over 250 organizations now eligible for the tax credit program have been legislatively excluded from the program.

28. Moreover, HB 2384 allows organizations that express an anti-choice viewpoint to participate in the tax credit program, while excluding organizations that express the opposite viewpoint on the basis of their speech.

29. Statements in the legislature by the sponsors of HB 2384 made clear that the purpose of the law was to target organizations on the basis of their pro-choice viewpoint and abortion-related speech. For example, Rep. Debbie Lesko, who sponsored HB 2384 in the Arizona House of Representatives, stated: "If organizations want to continue to qualify for donations through the Working Poor Tax Credit then they can't refer, promote or provide abortions." Tessa Muggeridge, *GOP Bills to Further Limit Abortions Make Gains at Capitol*, CRONKITE NEWS (Feb. 28, 2011), http://cronkitenewsonline.com/2011/02/gop-bills-to-further-limit-abortions-make-gains-at-capitol/.

30. Absent an injunction, HB 2384 will become effective on December 31, 2011.

31. Upon information and belief, HB 2384 will not affect donations made during the 2011 taxable year, but will require all qualifying and potentially qualifying organizations to certify that they do not "provide, pay for, promote, provide coverage of or provide referrals for abortions," in order to participate in the program for the 2012 taxable year.

## THE EFFECT OF HB 2384 ON PLAINTIFF'S MEMBERS

32. Plaintiff AzCADV's members are committed to client- or survivor-centered advocacy, which means that they work to provide a survivor of domestic violence with all available resources without making any decisions for her.

33. An important aspect of healing from domestic violence, including sexual violence, is a victim's ability to make her own health related decisions when she leaves or is considering leaving an abusive relationship. AzCADV's members must have the flexibility to provide information about and make referrals to women's health organizations and individual providers that can offer expertise in addressing survivors' health concerns.

34. Victims of domestic violence experience a range of sexually abusive behaviors. For example, some men use verbal demands, threats and physical violence, including rape, to pressure their current or former spouse or girlfriend to become pregnant. Others engage in what is known as birth control sabotage—deliberate acts that ensure that a woman cannot use contraception to prevent an unwanted pregnancy, such as

preventing a woman from going to a family planning clinic, flushing birth control pills down the toilet, intentional breaking or removing of condoms, and removing contraceptive rings or patches.

35. As a result of this abuse, many survivors of violence and sexual assault will experience an unintended pregnancy. Some of these persons will understandably ask about abortion services. For some women, being forced to bear their abuser's child compounds the abuse. Carrying a pregnancy to term will make it more difficult for some women to leave an abusive relationship.

36. It is inconsistent with client- or survivor-centered advocacy—and potentially detrimental to survivors' health and safety—to restrict advocates from discussing the possibility of an abortion or from referring survivors to agencies that can provide medically accurate information in order to help them reach a decision about an unintended pregnancy, whether that decision is continuing the pregnancy and parenting, adoption, or abortion.

37. It is therefore essential that a counselor or advocate have the freedom to provide a victim with any needed or wanted information about, and referrals for, abortion.

38. The great majority of AzCADV's members throughout Arizona currently participate in the tax credit program.

39. Plaintiff's members have seen an increase in their donations after they have advertised their participation in the program. For example, when one shelter conducted its end of the year fundraising push and advised individuals that they could claim the tax

credit for donating to them the shelter received a surge in donations. Similarly, another shelter experienced an increase in donations after the local newspaper published a list of area organizations that qualified for the tax credit program.

40. HB 2384 also prohibits any organization that "promotes" abortion from participating in the tax credit program. The bill provides no definition or examples of what is meant by the term "promotes."

41. "Promotes" means different things to different people. It is so broad and vague that it could prohibit a range of activities, from discussing the option of abortion with a client to some of Plaintiff's members' current practice of inviting Planned Parenthood (which provides abortion care as well as contraceptive and other services) to shelters to provide presentations.

42. If HB 2384 is allowed to go into effect, the only way that Plaintiff's members can ensure continued participation in the tax credit program would be to self-censor and categorically withhold any information about and referrals for abortion from the women they serve.

## FIRST CAUSE OF ACTION – FIRST AMENDMENT

43. Plaintiff incorporates paragraphs 1 through 42 as if fully stated herein.

44. By excluding otherwise qualified organizations from participating in the Working Poor Tax Credit Program because of their abortion related speech, HB 2384 impermissibly restricts the free speech rights of Plaintiff AzCADV's members in violation of the First Amendment.

### SECOND CAUSE OF ACTION – EQUAL PROTECTION (FOURTEENTH AMENDMENT)

45. Plaintiff incorporates paragraphs 1 through 42 as if fully stated herein.

46. By excluding otherwise qualified organizations from participating in the Working Poor Tax Credit Program because of their abortion related speech, HB 2384 impermissibly discriminates against Plaintiff AzCADV's members.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. To enter a judgment declaring that HB 2384 violates the United States Constitution.

B. To issue such interim injunctive relief as may be necessary to maintain the status quo pending award of a final judgment.

C. To issue a permanent injunction restraining the Defendant, his employees, agents, and successors in office from enforcing HB 2384.

D. To award Plaintiff its attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

E. To grant such other and further relief as the Court deems just and proper.

Dated this 18th Day of August, 2011.

/s/ Daniel Pochoda
Daniel Pochoda
ACLU FOUNDATION OF ARIZONA
3707 N. 7TH Street, Suite 235
Phoenix, Arizona 85014

*On behalf of Attorneys for Plaintiffs.*